

The following constitutes
the order of the court. Signed November 2, 2017

**Charles Novack**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 16-40409 CN |
| GERALD VERBECK, | Chapter 13 |
| Debtor. | |
| CHRISTINA VERBECK, | Adversary No. 16-4150 |
| Plaintiff, | |
| vs. | **ORDER RE: NONDISCHARGEABILITY OF MSA OBLIGATION** |
| GERALD VERBECK, | |
| Defendant. | |

On October 17, 2017, this court conducted a trial in the above adversary proceeding. All appearances were noted on the record. Plaintiff Christina Verbeck and debtor and defendant Gerald Verbeck ("Verbeck") are former spouses, who separated in 2010 and divorced in 2014. As part of their dissolution, the Verbecks signed a Marital Settlement Agreement which contained an indemnification clause. Christina Verbeck asserts that Verbeck never intended to comply with the indemnification provision, since he failed to indemnify her for the legal fees and expenses that she incurred in defending against a credit card collection action based on his separate debt. The debtor disagrees and asserts that he may discharge this debt, which totals $14,472.84. For the reasons stated below, Christina Verbeck has not met her burden of proof, and judgment is entered for the defendant.

Much of the underlying facts are undisputed. The Verbecks separated in 2010, divorced in

2014, and signed a marital settlement agreement on June 12, 2014 to document the conclusion of their joint, financial affairs. In March 2011, Verbeck obtained two personal loans from Operating Engineers Federal Credit Union (the "Credit Union") totaling approximately $17,000.00. While the loan documents indicate that Christina Verbeck signed them, she denies executing or authorizing these documents. Verbeck does not dispute this contention.[1] Verbeck defaulted on the Credit Union loans in February 2013, and collection efforts against both parties ensued. Christina Verbeck learned about the Credit Union loans when she began receiving collection demands in February/March 2013, and she immediately contacted Verbeck for an explanation. During this and subsequent conversations, Verbeck repeatedly informed her that he would pay these loans. He did not, and the Credit Union filed and served an Alameda County Superior Court summons and complaint on both parties in May 2014 (the "Collection Action").[2] Verbeck neither retained an attorney nor formally responded to the complaint. Instead, Verbeck testified that he contacted the Credit Union and arranged to pay off both loans through monthly payments. He further testified that the Credit Union agreed to dismiss Christina Verbeck from the Collection Action after he fully repaid the loans. Verbeck made the last of these monthly payments in early 2015, and Christina Verbeck was dismissed with prejudice from the Collection Action on August 1, 2015. Christina Verbeck agrees that she did not pay any part of the two Credit Union loans.

Unlike her ex-husband, Christina Verbeck retained an attorney to represent her in the Collection Action. Christina Verbeck testified that she received the Collection Action summons and complaint in May 2014, and that she retained an attorney to represent her in the Collection Action on June 17, 2014. Verbeck learned that Christina Verbeck had retained counsel approximately two weeks later. Christina Verbeck answered the Collection Action complaint, and filed a cross-complaint against Verbeck and the Credit Union in October 2014. Christina Verbeck thereafter

---

[1] The court presumes that Verbeck signed her name to the Credit Union loan documents without her permission.

[2] The plaintiff in the Collection Action was actually Collection Management Resources, the Credit Union's assignee. For ease of reference, the court will collectively refer to them as "Credit Union."

ORDER RE: NONDISCHARGEABILITY OF MSA OBLIGATION

settled her claims against the Credit Union, and she testified that the Credit Union dismissed her from the Collection Action as part of this settlement agreement. Christina Verbeck did not, however, introduce that settlement agreement into evidence.

Between the commencement of the Collection Action (May 2014) and Christina Verbeck's dismissal (August 2015), Christina Verbeck and Verbeck executed a Marital Settlement Agreement on June 12, 2014 (The "MSA"). The MSA states that neither party was "represented by an independent attorney." The MSA lists the parties' community and separate debts, and the two Credit Union loans are listed as Verbeck's seperate debt. The MSA also contains an indemnification clause, which states that:

> "Each party warrants to the other that he or she has not incurred by debt, obligation, or other liability other than those in this Agreement on which the other party is or may be liable, and each party covenants and agrees that if any claim, action or proceeding is hereafter brought seeking to hold the other party liable on account of any other debt, obligation, liability, act, or seeking to hold the other party liable on account of any other debt, obligation, liability, act or omission of such party, such party will, at his or her sole expense, defend the other party against and such claim or demand, whether or not well founded, and that he or she will indemnify and hold harmless the other party therefrom."

Neither party testified or offered any evidence regarding whether this was a negotiated provision or what they understood this indemnification clause to mean when they executed the MSA. As stated above, Christina Verbeck filed a cross-complaint in the Collection Action several months after she signed the MSA. The cross-complaint alleged that the Credit Union was improperly seeking to collect the two loans against her, and that Verbeck was required to indemnify and hold her harmless under the MSA for any liability, expenses and fees that she may incur. Verbeck did not respond to the cross-complaint, and a $64,472.84 default judgment (consisting of $50,000 in damages, $13,357.42 in attorney fees, and $1,115.42 in costs) was entered against him. Christina testified that the $50,000 was for "punitive damages."

Christina Verbeck asserts that Verbeck defrauded her when he executed the MSA, since he never intended to hire an attorney to represent her in the Collection Action or to indemnify her for her legal expenses. She is seeking a non-dischargeable judgment under Bankruptcy Code § 523(a)(2)(A) for the attorney fees and costs included in her default judgment. Verbeck argues that

3

these fees and costs are dischargeable, since he believed that the MSA only required him to satisfy the two loans.

Bankruptcy Code § 523(a)(2)(A) provides that "A discharge . . . does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by - (A) false pretenses, a false representation, or actual fraud[.]" Christina Verbeck's complaint unfotunately does not specify which element of § 523(a)(2)(A) is at play. As demonstrated below, it does not matter, since she has not carried her burden of proof under any theory of nondischargeability.

A § 523(a)(2)(A) claim for misrepresentation requires that the plaintiff allege (1) a misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by his reliance on the debtor's statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000).

A debtor's knowledge and intent to deceive may be inferred by circumstantial evidence and from the debtor's conduct. *Edelson v. CIR*, 829 F.2d 828, 832 (9th Cir. 1987); *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1018 (9th Cir. 1997); *Donaldson v. Hayes (In re Ortenzo Hayes)*, 315 B.R. 579, 587 (Bankr. C.D. Cal. 2004). A § 523(a)(2)(A) claim requires that the "target misrepresentation must have existed at the inception of the debt, and a creditor must prove that he or she relied on that misrepresentation." *Reingold v. Shaffer (In re Reingold)*, 2013 WL 1136546, at *5 (9th Cir. BAP Mar 19, 2013); see also, *New Falls Corp. v. Boyajian (In re Boyajian)*, 367 B.R. 138, 147 (9th Cir. BAP 2007) (citing *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill.2002)). In addition, a §523(a)(2)(A) misrepresentation claim may arise from the concealment or intentional non-disclosure of material facts. *In re Evans*, 181 B.R. 508, 515 n.6 (Bankr. S.D. Cal.1995). Finally, Christina Verbeck must prove her non-dischargeability claim for relief by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Christina Verbeck has not met her burden of proof. Verbeck does not dispute that he was responsible for paying the two loans, and he ultimately satisfied this debt. Both parties were fully

4

aware of the Collection Action when they signed the MSA, and there is no evidence that they discussed what Verbeck's liability was beyond paying off the loans. Moreover, the MSA's indemnification clause does not, on its face, impose any further liability on Verbeck. The parties' indemnification liability only relates to "any claim, action or proceeding ... *hereafter* brought on a claim for the debt of another spouse."[emphasis added.] The Collection Action was commenced more than a month before the Verbecks signed the MSA. Verbeck testified that he believes that he satisfied any contractual obligation that he owed by Christina Verbeck by paying off the loans. While Christina Verbeck disagrees, she did not introduce any evidence that Verbeck expressly or impliedly promised to do more. Accordingly, Christina Verbeck has not met her burden of proof on any element of a misrepresentation claim for relief.

The same is true regarding a claim for false pretenses. A "false pretense" involves an implied misrepresentation or conduct intended to create or foster a false impression. It includes a "mute charade" where the debtor's conduct is designed to convey an impression without oral representation. *In re Begun*, 136 B.R. 490, 494 (Bankr.S.D.Ohio 1992). Christina Verbeck did not prove by a preponderance of the evidence that Verbeck implicitly misrepresented or otherwise implied that he would do anything more than pay off the two Credit Union loans. And, as discussed above, the MSA literally does not apply to the Collection Action.

Finally, Christina Verbeck has not established conduct amounting to "actual fraud." As explained by the United States Supreme Court in *Husky Int'l Elec., Inc. v. Ritz*, 136 S.Ct. 1581 (2016), "'Actual fraud' has two parts: actual and fraud. The word 'actual has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involves moral turpitude or intentional wrong.' 'Actual' fraud stands in contrast to 'implied' fraud or fraud 'in law,' which describe acts of deception that 'may exist without the imputation of bad faith or immorality.' Thus anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.' [¶] Although 'fraud' connotes deception or trickery generally, the term is difficult to define more precisely." *Id*. at 1586. Christina Verbeck has not met her burden of proof requiring her to prove (by a preponderance of the evidence) that Verbeck used any trickery or deception to avoid paying the attorneys fees and costs that she incurred in the Collection Action.

1       For all of the above reasons, judgment shall be entered in Verbeck's favor. During closing

2 argument, Verbeck requested that this court award him the attorneys fees that he has incurred in this

3 adversary proceeding. Verbeck must file and set for hearing an appropriate motion demonstrating

4 his right to his fees and costs.

**\*\*\* END OF ORDER \*\*\***

**ORDER RE: NONDISCHARGEABILITY OF MSA OBLIGATION**

# COURT SERVICE LIST

Recipients are ECF participants.

7

ORDER RE: NONDISCHARGEABILITY OF MSA OBLIGATION