

**The following constitutes
the order of the court. Signed December 13, 2017**

_____
**Charles Novack
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>GERALD VERBECK,<br>　　　　Debtor. | Case No. 16-40409 CN<br>Chapter 13 |
| CHRISTINA VERBECK,<br>　　　　Plaintiff,<br>vs.<br>GERALD VERBECK,<br>　　　　Defendant. | Adversary No. 16-4150<br><br>**ORDER AWARDING FEES UNDER BANKRUPTCY CODE § 523(d)** |

On December 11, 2017, this court conducted a hearing on defendant Gerald Verbeck's application for fees under Bankruptcy Code § 523(d) and pursuant to the parties' Marital Settlement Agreement (the "MSA"). All appearances were noted on the record. Gerald Verbeck's request for fees follows this court's November 2, 2017 memorandum decision which found that plaintiff Christina Verbeck (the defendant's former spouse) had not demonstrated by a preponderance of the evidence that defendant had defrauded her when the parties signed their MSA. Christina Verbeck had alleged at trial that defendant defrauded her when he agreed to defend, indemnify and hold her harmless against certain debts, and that her claim was non-dischargeable under Bankruptcy Code § 523(a)(2)(A). The evidence presented proved otherwise, and this court refers the parties to the November 2nd decision's findings of fact and law.

The court will, however, briefly summarize its findings to give this hearing some context. In

ORDER

March 2011, after the Verbecks separated but well before they executed the MSA, Gerald Verbeck signed plaintiff's name to certain credit union loan documents. He did so without her knowledge or permission. Defendant did not timely repay the credit union loans, and after the credit union began collection proceedings, Gerald Verbeck repeatedly assured Christina Verbeck that he would repay the loans in question. The credit union thereafter filed an Alameda County Superior Court collection action against the Verbecks in early May 2014 (the "collection action").[1] The parties signed the MSA after the collection action was commenced, and the Verbecks were aware of the collection action before they signed the MSA. The MSA's indemnification provision required defendant to defend, indemnify and hold plaintiff harmless from certain lawsuits that were commenced after the MSA's execution (the "indemnification clause"). Accordingly, on its face, the MSA's indemnification clause did not apply to the credit union collection action. Neither party introduced any evidence regarding what representations the parties made to each other when they negotiated the MSA.

Gerald Verbeck did not retain an attorney to represent him in the collection action. He testified that the credit union and he agreed (after he was served with the summons and complaint) that he would make monthly payments to the credit union to repay the loans that contained Christina Verbeck's signature, and that in exchange, the credit union would dismiss her after he completed these payments. While Christina Verbeck offered another reason why she was ultimately dismissed from the collection action, the facts weighed in favor of Gerald Verbeck's explanation, as he offered into evidence proof of his payments and the credit union's dismissal of his ex-spouse after he completed these payments.

Unlike her ex-husband, Christina Verbeck did retain an attorney to represent her in the collection answer, who answered the complaint and filed cross and counter claims against Gerald Verbeck and the credit union, respectively. She asserted, among other things, that Gerald Verbeck was liable for conversion and was obligated to indemnify her. Gerald Verbeck did not respond to the

---

[1] The court understands that the credit union assigned the loans to a collection agency, which sued the Verbecks under its own name. For simplicity's sake, the court refers to the collection entity as the "credit union."

cross-complaint, and a $64,472.84 default judgment was entered against him, consisting of $50,000 in damages and $14.472.84 in attorneys fees and costs. The attorneys fees award included all of the fees that Christina Verbeck incurred in the collection action to date. Christina Verbeck stated at trial that the $50,000 in damages consisted of "punitive damages." No other explanation was offered, and Christina Verbeck's attorney never asserted that the default judgment had any issue or claim preclusive effect.

The only claim that proceeded to trial before this court was Christina Verbeck's § 523(a)(2)(A) claim for relief for fraud. Christina Verbeck alleged that her Gerald Verbeck defrauded her when he represented in the MSA that he would defend, indemnify and hold her harmless. For the reasons stated in my November 2nd decision, this court determined that plaintiff failed to prove § 523(a)(2)(A) liability by a preponderance of the evidence.

Fees and Costs Under § 523(d).

Gerald Verbeck now seeks fees under § 523(d). Bankruptcy Code § 523(d) provides that "If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust." Under this code section, Gerald Verbeck must prove that 1) his ex-spouse requested a determination of the dischargeability of the debt under § 523(a)(2), 2) the debt is a consumer debt; and 3) the debt was discharged. Am.Sav.Bank v. Harvey (In re Harvey), 172 B.R. 314, 317 (9th Cir. BAP 1994). If Gerald Verbeck demonstrates these elements, the burden then shifts to Christina Verbeck to demonstrate that her position was substantially justified." In re Harvey, 172 B.R. at 317. A creditor is "substantially justified" in bringing a § 523(a)(2) claim if the claim has a "reasonable basis both in law and in fact." First Card v. Hunt (In re Hunt), 238 F.3d 1098, 1103 (9th Cir. 2001).

It is undisputed that Christina Verbeck requested a determination of dischargeability of a debt under § 523(a)(2). It is equally apparent that her claim was a consumer debt. The phrase "consumer debt" is defined in Bankruptcy Code § 101(8) as a "debt incurred by an individual primarily for a

3

personal, family or household purpose." Whether a debt is a consumer debt rests on the purpose for which the debt is incurred, and this determination is made as of the date the debt is incurred. Bushkin v. Singer (In re Bushkin), 2016 Bankr. LEXIS 2688 at *15, (9th Cir. BAP 2016).

Many courts define consumer debt by first noting what it is not. See, e.g., Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988): "Debt incurred for business ventures or other profit-seeking activities is plainly not consumer debt ...." Certainly, Gerald Verbeck did not sign the MSA and agree to its provisions (including the indemnification clause) with an eye toward profit. Rather, the Verbecks signed the MSA to conclude their marital affairs and assign responsibility for the debts incurred before its execution.[2] Accordingly, this debt was incurred for the most personal of reasons. The MSA does not appear to list any business debt, and given this, an agreement to defend, indemnify and hold harmless your former spouse for debts incurred before the execution of a MSA is nothing but a personal obligation, particularly when its execution concludes your marital relationship. Marital dissolution debts such as alimony are generally considered to be a consumer debt if they are not incurred with a profit motive or in connection with a business transaction. *See, e.g.*, Kestall v. Kestall (In re Kestall), 99 F.3d 146 (4th Cir. 1996); In re Steward, 175 F.3d 796 (10th Cir. 1999). Verbeck's indemnification/hold harmless obligation is equally personal in nature.

The one case cited by Christina Verbeck - Haeske v. Arlington (In re Arlington), 192 B.R. 494 (Bankr. N.D.Ill. 1996) - does not hold otherwise. In Arlington, the debtor agreed in her MSA to release her former spouse from a battery claim if he complied with certain MSA terms. Although Arlington's former spouse fulfilled his MSA obligations, Arlington still brought a personal injury claim against him. The state court dismissed Arlington's personal injury claim and ordered that she pay her ex-spouse $18,130.50 in attorneys fees as a sanction for bringing a frivolous lawsuit. Arlington thereafter filed a Chapter 7 bankruptcy, and her ex-spouse commenced an adversary proceeding under, *inter alia*, §§ 523(a)(2)(A) to have the sanctions award determined to be non-dischargeable. The bankruptcy court held that Arlington did not fraudulently promise not to release

---

[2] Gerald Verbeck's obligation (i.e., "debt") under the indemnification clause was unliquidated and unmatured when he signed the MSA.

4

the battery claim, and Arlington thereafter sought to recover her fees under § 523(d). The bankruptcy court denied her motion for fees on the ground that the sanctions award was not a consumer debt. It held that the "underlying debt owed [the ex-spouse] is a penalty imposed by the state court which arises from the Sanctions Order, and is not the type of "consumer debt" as defined in 11 U.S.C. § 101(14) which [Arlington] incurred primarily for a personal, family, or household purpose." Id. at 500.

The debt in Arlington is easily distinguishable from Gerald Verbeck's obligation under the indemnification clause. Gerald Verbeck' debt arose directly from the MSA itself, and it was part of the price he agreed to pay to conclude his marital obligations. The sanction award at issue in Arlington was a court imposed penalty attributable to Arlington's abuse of the judicial process.[3]

In contrast, Christina Verbeck has not established (when examining the totality of circumstances) that her § 523(a)(2) claim was substantially justified. On its face, MSA did not apply to the collection action, and she did not introduce any evidence indicating that the MSA's language was mistaken. Even if Christina Verbeck believed (given the Alameda County default judgment entered against her ex-spouse) that her attorneys fees and costs fell within the indemnification clause,[4] she did not introduce any evidence that Gerald Verbeck did not intend to comply with this provision when he signed the MSA. Rather, the evidence demonstrated that Gerald Verbeck repaid the loans in question, resulting in Christina Verbeck's dismissal from the collection action. Moreover, the evidence at trial established that Christina Verbeck retained counsel in the collection action after the parties signed the MSA, and that she did not discuss her intent to retain counsel with Gerald Verbeck before the MSA was signed. Given this state of the evidence, Christina Verbeck had little chance of prevailing at trial. While this court denied Gerald Verbeck's motion for summary

---

[3] While one could infer from Arlington that there are some debts that are neither "business" nor "consumer" debts under the Bankruptcy Code (See, e.g., In re Marshalek, 158 B.R. 704 (Bankr. N.D.Ohio 1993), the debt before this court does not fall into that statutory divide.

[4] This court again notes that this is the court's speculation, since Christina Verbeck never testified regarding this nor did her attorney assert that the default judgment resolved this issue as a matter of issue or claim preclusion.

5

ORDER
Case: 16-04150    Doc# 71    Filed: 12/13/17    Entered: 12/13/17 16:01:16    Page 5 of 9

judgment in the month before trial, that determination had more to do with Gerald Verbeck's failure to attach a copy of the MSA to his declaration in support of his summary judgment motion than with Christina Verbeck's paltry opposition to the motion. Substantial justification "is not present when a creditor proceeds "past the point where it knew, or should have known, that it could not carry its burden of proof." [citation omitted.] Tomey v. Dizinno (In re Dizinno), 559 B.R. 400, 409 (Bankr. M.D.Pa 2016).

There are also no special circumstances which makes a fee award unjust. A finding of "special circumstances" typically relies on "traditional equitable principles. In re Hunt, supra, 238 F.3d at 1104. While this court recognizes that the genesis of this entire dispute is Gerald Verbeck's unauthorized use of Christina Verbeck's signature, the Seventh Circuit has noted that § 523(d) is not a "license to the bankruptcy judge to base [a] decision on idiosyncratic notions of equity, fair dealing, or, in this case, family justice." In re Hingston, 954 F.2d 428, 429 (7th Cir. 1992). *See also* Kilbey v. Nawrocki, (In re Nawrocki), 2010 Bankr.LEXIS 3516 (9th Cir. BAP March 3, 2010). Significantly, Christina Verbeck has not argued that there are any applicable special circumstances.

Gerald Verbeck requests that this court award $8,557.00, which represent all of the fees and costs that he incurred in this adversary proceeding. This amount is excessive, since Christina Verbeck's original complaint included claims for relief (which were ultimately dismissed before trial) that do not fall under § 523(d). These alternative claims were all dismissed by October 17, 2016. The court, therefore, will award the reasonable fees and costs that Gerald Verbeck incurred after this date, which amount to $6,769.00.

This court may only award these fees, however, if Christina Verbeck's claim is discharged. Gerald Verbeck filed a Chapter 13, and he will not receive a discharge under § 1328 until he finishes his Chapter 13 plan. Accordingly, Christina Verbeck's obligation to pay these fees and costs is subject to the entry of Gerald Verbeck's Chapter 13 discharge under Bankruptcy Code § 1328.

**Fees and Costs under the MSA**

Gerald Verbeck also seeks to recover his reasonable fees and costs under the MSA. The MSA contains a clause entitled "Power of Court to Award Future Fees and Costs," which reads that "If either party shall bring an action or other proceeding to enforce this Agreement, or to enforce or

6

modify any judgment or order made by a court in connection with this judgment Agreement (sic) or the dissolution of the marriage of the parties, or to obtain any judgment or order relating to or arising from the subject matter of this Agreement, the court in that action or proceeding shall have the power to make against either party whatever order it deems proper under all of the circumstances then present for attorney's fees and other reasonable necessary costs." This court abides by the "American Rule" when awarding fees, and will engage in fee shifting only where a statute or contractual provision so provides. Section 523(d) is one such provision. Gerald Verbeck argues that the above clause also authorizes this court to award him his fees and costs. This court agrees with Christina Verbeck's statement that since her § 523(a)(2)(A) claim was not an action on a contract, this court cannot award fees under Cal. Civil Code § 1717. Section 1717 is not, however, the only relevant California statute. Gerald Verbeck may also rely on Cal. Code of Civ. Procedure §1021, which allows a party to recover attorney's fees in actions other than breach of contract complaints. Section 1021 provides in relevant part that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." Thus, under §1021, parties may contract for the recovery of attorney's fees regardless of whether such litigation is premised on contract claims, tort claims, statutory claims, or otherwise, so long as the fee clause is sufficiently broad to encompass such claims. "[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." Xuereb v. Marcus & Milichap, Inc. 3, Cal. App. 4th 1338, 1341; Exxess Electronixx v. Heger Realty Corp., 64 Cal. App. 4th 698, 706 (1998). Examples of such broadly worded language include clauses that allowed fees: "arising out of the execution of the agreement" (Santisas v. Goodin, 17 Cal. 4th 599, 607 (1998)); "relating to the contract" (Moallem v. Coldwell Banker Com. Group, Inc., 25 Cal.App.4th 1827, 1831 (1994)); "to which this Agreement gives rise" (Xuereb, 3 Cal.App.4th at 1342); incurred in "any dispute under the agreement" (Thompson v. Miller, 112 Cal.App.4th 327, 333 (2003)); incurred in "any dispute" (Maynard v. BTI Group, Inc., 216 Cal. App. 4th 984, 993 (2013)); and incurred pursuant to a "civil action instituted in connection with this Agreement" (Cruz

v. Ayromloo, 155 Cal. App. 4th 1270, 1277 (2007)).

This court cannot avoid the express terms of the MSA (Cal. Civ. Code §1639) if the language is "clear and explicit, and does not involve an absurdity" Cal. Civ. Code §1638. The MSA fee clause will be construed "in [its] ordinary and popular sense, rather than according to [its] strict legal meaning" unless the parties use language in a "technical sense" or usage indicates the language is to be given "special meaning." *See* Santisas 17 Cal. 4th at 608 ("[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.").

The MSA's fee clause is very broad (indeed, its language goes well beyond § 523(d)'s special circumstances provision) and seemingly includes this adversary proceeding. Its language gives this court great discretion in awarding such fees, and it does not require that this court award fees to the prevailing party. Rather, this court is required to consider all of the circumstances then present. Given the origin of this dispute, this court declines to award fees under the MSA.

Gerald Verbeck shall draft and submit an appropriate order and judgment.

**\*\*\* END OF ORDER \*\*\***

**COURT SERVICE LIST**

Recipients are ECF participants.